IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

DENISE  RICHARDSON  and  CALVIN *
RICHARDSON,
                                *
      Plaintiffs,
                                *
vs.                                  CASE NO. 4:11-CV-124 (CDL)
                                *
QUITMAN     COUNTY,     GEORGIA,
SHERIFF  STEVE  NEWTON,  DEPUTY *
COREY MASON, DEPUTY JAMIE MING,
and TAMMYE ATKINSON,            *

      Defendants.                *

_____

O R D E R

      Upon receiving a tip from a confidential informant that a
vehicle being driven by Plaintiff Calvin Richardson ("Mr.
Richardson") contained illegal drugs, Defendant Corey Mason
("Mason"), a sergeant with the Georgetown-Quitman County
Sheriff's Office, stopped Mr. Richardson's vehicle to conduct an
investigatory stop.  Plaintiff Denise Richardson ("Mrs.
Richardson") was a passenger in the vehicle.  During the stop,
Mr. and Mrs. Richardson were subjected to strip searches that
included examination, exposure, and touching of their body parts
and cavities.  The invasive body searches yielded no contraband,
but they have produced this lawsuit.[1]

_____

[1] The label given to the type of search a person is subjected to is of
no legal significance.  It is the nature and specific factual
circumstances of the search that are important.  However, for purposes

Claiming that the searches, investigatory stop, and their ultimate arrests violated their Fourth Amendment right to be free from unreasonable searches and seizures, Plaintiffs have sued the persons who participated in the stop, searches, and arrests in their official and individual capacities, the Georgetown-Quitman County Sheriff in his official and individual capacity, and Quitman County.[2]   They seek damages for the constitutional violations pursuant to 42 U.S.C. § 1983 ("§ 1983") and also assert various state law claims.   Defendants have filed a Joint Motion for Summary Judgment (ECF No. 26) as to all of Plaintiffs' claims except for claims against Mason based on the manner of Mr. Richardson's strip search and Mr. Richardson's false arrest.   Defendants assert immunity defenses as to Plaintiffs' official capacity claims, and they also contend that Georgetown-Quitman County cannot be liable for the additional reason that it had no policy or custom that

---

of a written order, it is sometimes expedient to use a shorthand reference to the particular search being analyzed.   In this Order, "strip search" and "body cavity search" refer to a non-consensual search for contraband on a person's body that includes the examination, exposure, and/or physical touching of parts of the body that are typically covered with clothing in public settings.

[2] In 2007, "Quitman County" ceased to exist because it merged with a municipality to become "the Unified Government of Georgetown-Quitman County."   Defs.' Mot. for Summ. J. Ex. B, Wilson Decl., ECF No. 26-2 at 1; id. attach. 1, Charter of the Unified Government of Georgetown-Quitman County §§ 1-101, 8-103, 8-107, ECF No. 26-2 at 2, 4. Plaintiffs filed a motion to amend their Complaint, seeking to substitute the Unified Government of Georgetown-Quitman County for Quitman County.   Plaintiff's Motion to Amend (ECF No. 43) is hereby granted.

contributed to the alleged constitutional violations. Defendants in their individual capacities assert the defense of qualified immunity. Plaintiffs filed a Motion for Summary Judgment (ECF No. 23) on their Fourth Amendment claims. As discussed below, the Court finds that Mason is not entitled to qualified immunity as to Mrs. Richardson's Fourth Amendment strip search claim against him in his individual capacity, and Defendants' motion for summary judgment is denied as to that claim only. Defendants' Joint Motion for Summary Judgment is otherwise granted.[3] Plaintiff's Motion for Summary Judgment is denied. As a result, the claims remaining for trial are Mrs. Richardson's Fourth Amendment strip search claim against Mason, Mr. Richardson's Fourth Amendment strip search claim against Mason, and Mr. Richardson's Fourth Amendment and state law false arrest claims against Mason.

---

[3] Defendants did not move for summary judgment as to Mr. Richardson's Fourth Amendment claim arising from the manner in which Mason conducted the strip search of him. To the extent that Defendants attempt to distinguish between the constitutionality of the decision to conduct the strip search of Mr. Richardson and the actual manner in which the search was conducted, the Court finds that given the close connection between the two and the totality of the circumstances, both must be considered in evaluating whether a Fourth Amendment violation has occurred. Therefore, to the extent that Defendants seek to separate this conduct into separate claims and seek summary judgment as to the decision to search, the Court denies that aspect of their motion. As a practical matter, that evidence will have to be considered in evaluating the manner of the search claim, as to which no summary judgment motion has been filed. So, while the Court recognizes the theoretical and academic distinction, the Court concludes that the appropriate course is to allow both aspects of the strip search to be considered in determining whether a Fourth Amendment violation occurred and whether Mason was on fair notice that his conduct violated the Fourth Amendment.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.   A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs for purposes of deciding Defendants' motion for partial summary judgment, the record reveals the following.

On August 24, 2009, Mason, a sergeant with the Georgetown-Quitman County Sheriff's Office, received a call from a confidential informant reporting that a person named Calvin had just obtained cocaine in the "bluff" area of Eufaula, Alabama, an area known for drug activity, and would be driving in a cream-colored Lincoln with a female over the bridge into Georgetown, Georgia.   Mason Dep. 35:5-36:25, ECF No. 51-2; D.

Richardson Dep. 106:3-24, ECF No. 30[4] (agreeing that as a resident living up the street from the "bluff," she had heard "there was drug activity in that area"). Mason knew the informant, having previously recovered drugs and made an arrest based on information he supplied. Mason Dep. 35:9-13. The informant informed Mason that if the cocaine was not in the car, it would be in the possession of one of the vehicle's occupants. He also mentioned that Calvin was known to conceal cocaine in his buttocks. *Id.* at 52:13-25. Mason did not inquire further about the informant's basis for giving this last detail, *id.* at 53:1-18, nor did Mason receive any information about the unidentified female passenger and her involvement in the alleged illegal activity.

## I. The Investigatory Stop

When Mason saw a vehicle fitting the informant's description, *id.* 40:1-41:2, he informed fellow deputy sheriff Defendant Jamie Ming ("Ming") over the radio that he intended to stop the vehicle. Ming Dep. 10:24-11:12, ECF No. 51-7. Mason explained to Ming that a confidential informant reported that the vehicle's occupants had obtained cocaine from the "bluff" area in Eufaula. *Id.* at 12:24-13:5. Mason alerted the vehicle to pull over using his blue lights, and the vehicle stopped at

---

[4] Mrs. Richardson's deposition was submitted as one main document with two supplements: ECF Nos. 30, 30-1, and 30-2. For the sake of simplicity, the Court will refer to the entire deposition using the main document number.

the Liberty Gas Station in Georgetown.   Mason Dep. 41:10-13.
Ming pulled in behind them in his vehicle to assist Mason with
the stop.[5]   Ming Dep. 12:7-11.   Mason was Ming's supervisor, and
Ming had been a law enforcement officer for only a short time.
*Id.* at 92:3-5, 92:21-93:2.

Mason first asked the driver, Mr. Richardson, for his
driver's license, but Mr. Richardson informed Mason that he did
not have a license because it was expired.   C. Richardson Dep.
51:23-52:5, ECF No. 32.[6]   Mr. Richardson voluntarily relinquished
a knife in his possession to Ming.   Ming Dep. 18:9-12.
According to Mr. Richardson, Mason patted him down.   C.
Richardson Dep. 60:22-61:17.   Mason also asked Mr. Richardson to
empty the contents of his pockets, and Mr. Richardson did so.
Mason Dep. 51:11-16; C. Richardson Dep. at 60:25-61:9.   Mason
then conducted a search of Plaintiffs' vehicle.   Mason Dep.
47:17-22.   Mason describes his initial search of the vehicle as
a cursory search.   Mason Dep. 101:6-12.   Plaintiffs contend that
Mason searched the vehicle twice when he first made the stop and
that Ming participated in searching the car.   Ming Dep. 24:4-13;
D. Richardson Dep. 139:4-141:4.   Also, Ming stood with Mr.

---

[5] Plaintiffs deny that Ming's participation was limited to a backup
role, but they do not point to any evidence to support their
contention that he "acted as a full voluntary participant."   Pls.'
Statement of Material Facts ¶ 12, ECF No. 42.
[6] Mr. Richardson's deposition was submitted as one main document with
two supplements: ECF Nos. 32, 32-1, and 32-2.   For the sake of
simplicity, the Court will refer to the entire deposition using the
main document number.

Richardson as Mason asked Mrs. Richardson questions.    D. Richardson Dep. 130:3-9.

## II.  The Alleged Strip and Cavity Searches

Mason decided to search Plaintiffs for drugs.  He suspected that they had concealed drugs on their bodies in areas where they could not be seen from a visual inspection of their outer clothing.  Mason, who had been a law enforcement officer since 1995, had worked as a narcotics officer in Enterprise, Alabama before joining the Georgetown-Quitman County Sheriff's Office. Mason Dep. at 8:23-9:1, 10:6-17, 54:19.    Based on his experience, Mason knew that the buttocks and scrotum areas were common places for a male to conceal drugs and that the chest and vaginal areas were common places for a female to conceal drugs. *Id.* at 53:10-18.    Therefore, he decided to search these areas for the drugs.

Because no female deputy was available to search Mrs. Richardson, Mason called Defendant Tammye Atkinson ("Atkinson"), a female licensed paramedic, for assistance*. Id.* at 79:25- 80:14, 85:7-13.    Atkinson was also the director of the Georgetown-Quitman County Emergency Medical Services ("EMS"). Defs.' Joint Mot. for Summ. J. Ex. A, Atkinson Decl. ¶ 2, ECF No. 26-1; Atkinson Dep. 8:9-14, ECF No. 51-9.    Atkinson had experience searching people's pockets and looking beneath people's clothing in the course of providing medical treatment.

Atkinson Decl. ¶ 3; Atkinson Dep. 16:1-15.   Mason explained to Atkinson that he was conducting a drug investigation and needed her help searching a female who could possibly have drugs on her person.   Atkinson Dep. 12:6-11, 27:20-23; Mason Dep. 86:10-13, 87:15-88:2.   This was the only time Mason had ever asked Atkinson to assist in searching a suspect.   Mason Dep. 80:15-17, 86:14-18; Atkinson Dep. 13:19-24.

Atkinson arrived in an EMS vehicle.   Mason directed Atkinson to check whether Mrs. Richardson had drugs underneath her clothing.   Mason Dep. 88:25-89:10; Atkinson Dep. 16:24-17:1. According to Mrs. Richardson, Mason referred to Atkinson as "his officer."   D. Richardson Dep. 161:8-11.   Atkinson told Mason there was a restroom inside the convenience store, so Mason and Atkinson walked Mrs. Richardson to the restroom.   *Id.* at 161:12-14, 162:5-7.   Mason told Atkinson to make sure nothing was flushed down the toilet.   Atkinson Dep. 19:16-17.   Mrs. Richardson went into the restroom first, and then Atkinson walked in and shut the door.   *Id.* at 20:1-4, 14-16.   No one else was in the small, fully-enclosed, single restroom.   According to Mrs. Richardson, Atkinson wore medical gloves and searched her vagina and rectum for drugs by probing them with a single finger for two seconds or less.[7]   D. Richardson Dep. 185:20-186:5,

---

[7] Atkinson adamantly denies conducting a strip and cavity search. According to Atkinson, Mrs. Richardson took off her pants without

186:17-187:21.   Mrs. Richardson also claims that Atkinson felt for drugs under her shirt beneath her breasts for about ten to fifteen seconds without removing her bra.[8]   D. Richardson Dep. 184:1-21.   Including about a minute to arrange clothing, Mrs. Richardson and Atkinson were in the restroom for about five minutes total.   Mrs. Richardson was crying during this time. Atkinson Dep. 23:23-24:4.   Mrs. Richardson acknowledges that Atkinson came across as kind and caring.   D. Richardson Dep. 189:5-11.

According to Mr. Richardson, Mason conducted a strip and cavity search of Mr. Richardson by the EMS vehicle.[9]   C. Richardson Dep. 56:3-4, 56:24-57:9, 103:3-104:10.   During this time, Atkinson was standing on the other side of the vehicle. Atkinson Dep. 31:1-5; *see also* D. Richardson Dep. 211:4-19 (indicating Atkinson's position as "A"); *id.* Ex. 11, Sketch of Truck, ECF No. 30-3 at 16 (same).   Ming testified he stood by Mason and Mr. Richardson and angled his body so that he could act as a shield "to help for privacy."   Ming Dep. 43:23-17.

---

being asked to do so, and Atkinson told Ms. Richardson that she was not going to search her and to pull her pants up.   Atkinson Dep. 20:17-22:9.   For purposes of Defendants' summary judgment motion, however, the Court must view the evidence in the light most favorable to Plaintiffs.

[8] Atkinson also denies touching Mrs. Richardson's breasts.   Atkinson Dep. 23:6-8.

[9] Mason strongly disputes conducting a cavity search of Mr. Richardson. Mason Dep. 78:23-79:5.   Defendants concede that there is a genuine fact dispute regarding whether Mason conducted a cavity search and whether it was conducted in an abusive manner.   Therefore, the Court includes factual background only to the extent necessary.

Because Mrs. Richardson "was hollering" as she approached Mason during his search of Mr. Richardson, Ming had to repeatedly order Mrs. Richardson to step back behind Ming's vehicle.  Mason Dep. 79:18-24; D. Richardson Dep. 204:18-205:18.   Mrs. Richardson did not follow Ming's orders, and only after he threatened to handcuff her did she step back toward Ming's vehicle.   D. Richardson Dep. 206:1-14, 212:11-22.   Mr. Richardson testified that Ming had to stand with Mrs. Richardson during Mason's search, but that Ming participated by watching it happen and not stopping it.  C. Richardson Dep. 43:10-12, 96:10-16, 104:16-22, 106:14-19.

No drugs were found on Mr. or Mrs. Richardson's bodies or in their clothing.

### III. The Dog Alert and Discovery of Cocaine

After the personal searches yielded no contraband, Mason drove to his nearby house to retrieve his K-9 drug dog trained to alert to the odor of narcotics.   Mason Dep. 102:18-24. Within a few minutes, Mason returned to the scene and walked the dog around and through Plaintiffs' vehicle.   *Id.* at 105:5-11. The dog alerted to the smell of narcotics by sitting by the passenger side.   *Id.* at 103:24-104:14.   According to Mrs. Richardson, she observed Mason enter that side of the car with his right hand balled up as if to place something and said "woof" to make the dog bark.  D. Richardson Dep. 230:15-231:17,

233:1-24, 235:21-25.   Mason told Ming the dog had alerted and directed Ming to search the vehicle.   Ming Dep. 62:13-63:3, 66:4-16.   Ming thoroughly searched the front passenger side using a flashlight, and he found a small baggie containing what he recognized as two crack rocks, which had been shoved underneath the passenger side seat in the metal track near the center console.   *Id.* at 64:3-16, 65:11-23.   Mason arrested both Plaintiffs, and Ming transported them to the Sheriff's Office in his vehicle.   Ming Dep. 87:9-11, 90:14-17.   Ming turned the evidence over to Mason, the evidence custodian, at the Sheriff's Office that night.   Ming Dep. 69:5-9, 70:8-16, 74:11-20.   The state crime lab later confirmed that the baggie contained crack cocaine.[10]   Newton Dep. 50:6-13, ECF No. 51-1.

When Plaintiffs arrived at the Sheriff's Office, Defendant Sheriff Steve Newton ("Newton") heard Plaintiffs complaining that Mason had performed "a strip search."   Newton Dep. 10:15-23, 12:3-13:16.   Newton, who was not personally involved in the searches at issue in this action, apologized to Mr. Richardson and told him he "would do a thorough investigation."   *Id.* at 15:10-12.   Newton then interviewed both Plaintiffs and took written statements from them shortly after the incident.   *Id.* at 13:22-14:8, 18:14-23.   Newton also reviewed the officers'

---

[10] Plaintiffs appear to dispute this statement, but they cited no evidence to contradict it.

reports and written statements from other known witnesses.  *Id.* at 19:2-21:8.  As a result of the investigation, Newton concluded "that no violation of departmental policy or law had occurred."  *Id.* at 23:12-14.

## IV.  Deputy Training and Official Policies

Mason and Ming received peace officer certification after they completed training through the Georgia Peace Officer Standards and Training Council (P.O.S.T.).  Mason Dep. 16:13-24; Ming Dep. 92:6-7.  The P.O.S.T. certification course includes search and seizure procedure and ongoing training.  Mason Dep. 17:21-18:2, 33:12-15; Ming Dep. 92:8-13.  The Sheriff's Office did not have a published policy or procedure relating to strip searches at the time of the events giving rise to this action. Newton Dep. 45:11-17, 47:13-25; Mason Dep. 58:19-25; *see also* Newton Dep. 37:7-10 ("I do not prohibit deputies from doing what they need to do, within the state law, to investigate narcotics or any other case.  No, there is not a specific policy."). Newton stated that his policy was that his deputies were expected to abide by the standards of relevant law, in accordance with their police training.  *Id.* at 28:9-13, 34:18-35:14, 36:8-15.

Prior to the incident, Newton was not familiar with any complaints that an officer was not following the law, or that a citizen's constitutional rights were being violated as a result.

*Id.* at 53:5-8 ("Previous to this event, the only complaints about my department, that I'm familiar with, were a few that were about [Mason]'s rudeness or cursing."). Mason stated he did not think that he performed similar strip searches while working for the Georgetown-Quitman County Sheriff's Office. Mason Dep. 58:11-18. Also prior to the incident, Georgetown-Quitman County had no express policy against EMS employees assisting in criminal investigations. Atkinson Dep. 37:14-17.

## V.   Plaintiffs' Claims

Plaintiffs maintain that Defendants lacked probable cause for their actions and violated Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures. Plaintiffs assert claims arising from the stop of Plaintiffs in their vehicle, the pat down, pocket search, and strip and cavity search of Mr. Richardson, the strip and cavity search of Mrs. Richardson, the search of Plaintiffs' vehicle with and without the assistance of a trained dog, and their arrest. Compl. ¶¶ 33-42, ECF No. 1. Plaintiffs assert federal claims pursuant to § 1983 and § 1988 against Georgetown-Quitman County[11] and Mason, Ming, Atkinson, and Newton in their official and individual capacities. Plaintiffs also seek punitive damages from each Defendant and assert separate state law claims for false arrest and failure to train/negligent retention.

---

[11] *See supra* note 2.

DISCUSSION

I.   **Defendants' Motion for Partial Summary Judgment**

    A.   <u>Claims Against Defendants in their Official Capacities
        and Against Georgetown-Quitman County</u>

        *1.   § 1983 Claims*

Plaintiffs assert § 1983 claims against the individual Defendants in their official capacities and against Georgetown-Quitman County. Plaintiffs allege that Defendants, acting under color of law, violated their constitutional rights to be free from unreasonable searches and seizures under the Fourth Amendment. Plaintiffs claim that Defendants lacked probable cause to stop Plaintiffs, to search their car, to search Plaintiffs, and to arrest Plaintiffs. Plaintiffs also claim that the strip and cavity searches of Plaintiffs were unreasonable.

A § 1983 claim against an officer in his official capacity is "functionally equivalent" to a direct claim against the entity that employed the officer. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (per curiam) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Therefore, the Court construes official capacity claims against Mason, Ming, and Newton as claims against the Georgetown-Quitman County Sheriff. The Court also construes official capacity claims against Atkinson as claims against Georgetown-Quitman County. For the reasons set forth below, the Court grants Defendants' motion for

summary judgment as to all § 1983 claims against the Georgetown-Quitman County Sheriff and Georgetown-Quitman County.

> a.   THE GEORGETOWN-QUITMAN COUNTY SHERIFF

Eleventh Amendment immunity bars suits in federal court against a state or "an arm of the State."   *Manders v. Lee*, 338 F.3d 1304, 1308-09 (11th Cir. 2003) (en banc) (internal quotation marks omitted).   A Georgia sheriff is considered an "arm of the State" when performing law enforcement functions, such as detaining and arresting suspects.   *Id.* at 1310-11; *accord Burgest v. Colquitt Cnty.*, 177 F. App'x 852, 855 (11th Cir. 2005) (per curiam) (affirming summary judgment in favor of the sheriff and his employees sued in their official capacities on claims related to the plaintiffs' detention and arrest based on Eleventh Amendment immunity).   Therefore, Eleventh Amendment immunity bars Plaintiffs' official capacity claims against Mason, Ming, and Newton.[12]

> b.   GEORGETOWN-QUITMAN COUNTY

Defendants argue that Plaintiffs' Complaint named "Quitman County" as a Defendant and that those claims must be dismissed because "Quitman County" is not a legal entity capable of being

---

[12] Defendants also contend that the official capacity claims against Mason, Ming, and Newton fail because the Sheriff, an arm of the State, is not a "person" subject to suit under § 1983 and because Plaintiffs have not pointed to evidence that the Sheriff had a policy or custom that caused the alleged constitutional violations.   The Court need not reach these arguments because the official capacity claims against Mason, Ming, and Newton are barred by Eleventh Amendment immunity.

sued.  This misnomer has been corrected, however, by the Court's granting of Plaintiffs' motion to substitute the Unified Government of Georgetown-Quitman County for "Quitman County." Therefore, the Court must determine whether Plaintiffs' claims against Georgetown-Quitman County can be maintained.

Under Georgia law, "a county has no authority and control over the sheriff's law enforcement function" regarding certain conduct and policies and cannot incur liability under § 1983 based on the performance of those functions. *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1347 (11th Cir. 2003) (en banc). Based on this principle, Defendants argue that Georgetown-Quitman County cannot be liable for the acts and policies of the Sheriff and his deputies at issue in this action.  Plaintiffs failed to respond to this argument.  The Court finds the unopposed argument of Georgetown-Quitman County persuasive and therefore concludes that Georgetown-Quitman County cannot be held liable for the alleged acts and omissions of Mason, Ming, and Newton.

That leaves the claim against Georgetown-Quitman County based on Atkinson's conduct.  It is well established that a local government cannot be held liable under § 1983 for the official acts of its employees under a theory of respondeat superior; rather, liability must be based on an official policy or custom. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694

(1978).   For *Monell* liability, a plaintiff must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).   Plaintiffs point to no evidence of an official policy that caused Atkinson to act as alleged by Plaintiffs.   Instead, Plaintiffs argue that Atkinson's single decision to assist in the alleged search establishes an informal policy by a final policymaker, which was also ratified by Georgetown-Quitman County because she still holds the position of EMS Director.

The Supreme Court has held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).   Such "appropriate circumstances" exist when the acts were officially "sanctioned or ordered" by the municipality through some body or official with "final policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).   Whether an official has "final policymaking authority" in a particular area is a question of state law. *McMillan v. Monroe Cnty., Ala.*, 520 U.S. 781, 785-86 (1997).

17

Here, Plaintiffs presented no evidence that Atkinson has "final policymaking authority" for Georgetown-Quitman County with regard to her decision to assist the sheriff's deputies during the incident at issue. In support of their argument that Atkinson had "final policymaking authority," Plaintiffs rely solely on Atkinson's deposition testimony that she received an official, rather than personal, call from Mason and that she responded in her County uniform and vehicle while on duty. These facts may show Atkinson was acting on Georgetown-Quitman County's behalf, but they simply do not establish that she had final policymaking authority for Georgetown-Quitman County under state law. *See Praprotnik*, 485 U.S. at 139 (Brennan, J., concurring in judgment) (emphasizing that in *Pembaur* the Supreme Court already "made clear that a municipality is not liable merely because the official who [allegedly] inflicted the constitutional injury had the final authority to *act* on its behalf"). Moreover, Defendants have demonstrated that state law vests final policymaking authority in the Georgetown-Quitman County Commission. Ga. Const. Art. IX, § II, ¶ I(a); O.C.G.A. § 1-3-3(7). Regarding emergency medical services in particular, Defendants have shown that the Georgetown-Quitman County manager had final policymaking authority over the EMS agency, not Atkinson. *See* Atkinson Dep. 35:6-37:25 (discussing directives and communications from the county manager).

Plaintiffs also failed to point to any evidence of official sanctioning or ordering of Atkinson's acts.   Plaintiffs argue that because Atkinson is still the EMS Director, Georgetown-Quitman County ratified her conduct, but this argument is legally and factually insufficient. *See Praprotnik*, 485 U.S. at 130 (explaining that "the mere failure to investigate" an employee's decision does not amount to delegating policymaking authority and noting that "[i]t would be a different matter" if a particular decision was expressly approved by the policymaker).   The mere fact that Atkinson is still employed in her position does not give rise to an inference of approval of her conduct in this specific, isolated incident.   In sum, Plaintiffs have produced no evidence from which a reasonable factfinder could conclude that Atkinson acted pursuant to a government policy or practice that caused a constitutional violation.   Therefore, Georgetown-Quitman County is entitled to summary judgment on Plaintiffs' § 1983 claims.

> 2.   *State Law Claims*

In addition to their § 1983 claims, Plaintiffs assert claims under Georgia law for false arrest and failure to train/negligent retention.   Although it is not clear against which Defendants Plaintiffs assert these claims, it is clear that any state law claims against the Georgetown-Quitman County Sheriff and Georgetown-Quitman County are barred by sovereign

immunity.[13]  The Georgia Constitution extends sovereign immunity to "the state and all of its departments and agencies," including sheriffs and counties.  Ga. Const. art. I, § II, ¶ IX(e); *Gilbert v. Richardson*, 264 Ga. 744, 747, 452 S.E.2d 476, 479 (1994).  Furthermore, a defendant "sued in his official capacity . . . is entitled to the benefit of [the] County's sovereign immunity defense," but only to the extent the County has not waived it.  *Gilbert*, 264 Ga. at 754, 452 S.E.2d at 484; *accord Seay v. Cleveland*, 270 Ga. 64, 65, 508 S.E.2d 159, 160 (1998) (discussing the *Gilbert* rule in the context of an action against a sheriff in his official capacity).  Therefore, sovereign immunity bars state law tort claims such as those alleged by Plaintiffs unless Plaintiffs prove that sovereign immunity has been waived.  *Bd. of Regents of Univ. Sys. of Ga. v. Daniels*, 264 Ga. 328, 328, 446 S.E.2d 735, 736 (1994); *accord Scott v. City of Valdosta*, 280 Ga. App. 481, 484-85, 634 S.E.2d 472, 476 (2006) (holding that sovereign immunity barred a false arrest claim against a county based on an officer's conduct); *Seay*, 270 Ga. at 65, 508 S.E.2d at 161 (finding that a negligent supervision claim against the sheriff was barred by sovereign immunity).  Plaintiffs presented no argument or evidence that either the Sheriff or Georgetown-Quitman County has waived

---

[13] Again, the Court construes official capacity claims against Mason, Ming, and Newton as claims against the Georgetown-Quitman County Sheriff and construes official capacity claims against Atkinson as claims against Georgetown-Quitman County.

sovereign immunity as to Plaintiffs' claims; therefore, the Court grants Defendants' motion for summary judgment as to all state law claims against Georgetown-Quitman County, the Georgetown-Quitman County Sheriff, and other Defendants in their official capacities.

> B.   Claims Against Defendants in their Individual Capacities
>
>> 1.   § 1983 Claims

Plaintiffs also bring individual capacity claims alleging that Defendants, acting under color of law, violated Plaintiffs' constitutional rights to be free from unreasonable searches and seizures under the Fourth Amendment. Plaintiffs claim that Defendants lacked probable cause to stop Plaintiffs, to search their car with and without a trained dog, to search Plaintiffs, and to arrest Plaintiffs. Plaintiffs also contend that the strip and cavity searches of Plaintiffs were unreasonable. The individual Defendants assert qualified immunity as defenses to these claims.

Qualified immunity protects officers acting within the scope of their discretionary authority from liability as long as they did not violate "clearly established" law. *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010), *aff'd*, 132 S. Ct. 1497 (2012). Once Defendants establish that they were acting within their discretionary authority, Plaintiffs bear the burden

of showing that (1) the officers committed a constitutional violation and (2) the right allegedly violated was clearly established at the time of the incident. *Cottone v. Jenne*, 326 F.3d 1352, 1357-58 (11th Cir. 2003). "[T]his two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)).

In determining whether a constitutional right is "clearly established," the Court looks to whether a reasonable officer would have fair and clear notice "that his conduct was unlawful in the situation he confronted." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (internal quotation marks omitted). This standard can be met in a number of ways. First, the conduct may be "so egregious" as to violate the Constitution on its face absent clarifying case law, *id.* at 1350-51, but this is considered a narrow exception, *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003). Second, a broad principle in case law may apply to a specific set of facts "with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct" violated federal law at the time the official acted. *Vinyard*, 311 F.3d at 1351. Because most precedents are tied to particularized facts, such decisions are

rare.  *Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1287 (11th Cir. 2009) (per curiam).  Third, fact-specific precedents can clearly establish a right when the specific conduct currently at issue is "not fairly distinguishable" from that already held to violate a federal right.  *Vinyard*, 311 F.3d at 1352.

> a.   DEPUTY MASON

Mason argues that qualified immunity protects him from liability for all federal claims against him except for Mr. Richardson's claims arising from the arrest and the strip search of Mr. Richardson.  *See supra* note 3.  Those claims for which he seeks qualified immunity include Mason's role in conducting the investigatory stop of Plaintiffs, the pat down and pocket search of Mr. Richardson, the initial search of Plaintiffs' vehicle, the strip and cavity search of Mrs. Richardson, the search of Plaintiffs' vehicle with the trained K-9 dog, and the subsequent search underneath the passenger seat.  It is undisputed that this conduct falls within the scope of Mason's job functions and thus his discretionary authority.  Therefore, Plaintiffs bear the burden of showing Mason is not entitled to qualified immunity.  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1267 (11th Cir. 2004).  At the summary judgment stage, Plaintiffs "must demonstrate that a reasonable jury could interpret the evidence in the record as showing that the

defendant violated a constitutional right that was clearly established at the time of the acts in question." *Id.*

### i.  The Investigatory Stop

The Fourth Amendment requires an officer to have a reasonable, articulable suspicion of criminal activity in order to conduct an investigatory stop. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *see also Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (describing this standard as "at least a minimal level of objective justification"). "When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000).

Plaintiffs concede that "the parameters set by the *Terry* case may have allowed the investigatory stop in the present case." Pls.' Resp. to Def. Mason's Mot. for Summ. J. 6, ECF No. 38. The Court agrees. Mason received information from an identified informant who had reliably provided information leading to a drug arrest in the past. The informant's information was corroborated by the fact Mason observed Plaintiffs travelling in their car as described in detail by the informant. Mason Dep. 35:5-36:25 (describing a "Calvin" who just obtained cocaine and was driving from the "bluff" area of Eufala to Georgetown with a female in a cream-colored Lincoln).

Plaintiffs do point to the fact that Mason did not question the informant for more information regarding the basis of his knowledge of where Mr. Richardson might carry drugs. *Id.* at 53:1-18 (explaining that Mason did not question the information because it appeared consistent with his knowledge and experience in law enforcement). This fact, however, is insufficient to dispute that Mason had arguable reasonable suspicion to justify the investigatory stop.

A tip's veracity, reliability, and bases of knowledge are evaluated under a "totality of the circumstances" approach. *Illinois v. Gates*, 462 U.S. 213, 230-33 (1983); *United States v. Gonzalez*, 969 F.2d 999, 1002-03 (11th Cir. 1992). Factors considered include (1) whether the tip places the informant at risk for negative repercussions if untrue because it was provided directly rather than anonymously, *Breeding* ex rel. *C.B. v. Driscoll*, 82 F.3d 383, 388 (11th Cir. 1996), or because "the officer can track down the tipster again," *United States v. Heard*, 367 F.3d 1275, 1279 (11th Cir. 2004); (2) whether the tip provides specific information typically known only by someone with personal knowledge, *United States v. Kent*, 691 F.2d 1376, 1381 (11th Cir. 1982); (3) whether the information is capable of objective verification, *id.*; (4) whether the tip provides details about "future actions of third parties ordinarily not easily predicted" that later occur, *Gates*, 462 U.S. at 245; (5)

25

whether the informant had personal knowledge, *Craig v. Singletary*, 127 F.3d 1030, 1047 (11th Cir. 1997) (en banc); (6) whether there is a past history between the informant and the police department that supports reliability, *id.*; and (7) whether the information was corroborated by subsequent investigation, *id.* Because the identified informant in this case had reliably provided drug information in the past and because some details predicting future travel were verified almost immediately by Mason's investigation, the Court finds that the information was sufficiently reliable under the totality of the circumstances even if Mason did not ask if the informant based certain information on personal knowledge or hearsay. *See, e.g.*, *Alabama v. White*, 496 U.S. 325, 331 (1990) (noting that an anonymous tip predicting future activity is sufficiently reliable because when "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity"); *United States v. Woods*, 385 F. App'x 914, 918 (11th Cir. 2010) (per curiam) (finding that a traffic stop was justified based on an anonymous tip accurately predicting that a subject with narcotics would be driving a certain vehicle in a certain area at a certain time); *United States v. Baptiste*, 388 F. App'x 876, 880 (11th Cir. 2010) (per curiam) (finding a tip about drug delivery

sufficiently reliable even though the truck was a different color than predicted).  Therefore, Mason had arguable reasonable suspicion to justify the investigatory stop, and Plaintiffs pointed to no authority that a reasonable officer in Mason's position would have believed that the stop was unlawful under the circumstances.  Accordingly, Plaintiffs have failed to establish that Mason violated clearly established law, and Mason is entitled to qualified immunity for conducting the stop.[14]

### ii.  The Vehicle Searches

The police may search a vehicle for contraband without violating the Fourth Amendment if the vehicle "is readily mobile and probable cause exists to believe it contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam). Probable cause can arise from an informant's tip plus independent corroboration by the police.  *United States v. Talley*, 108 F.3d 277, 281-82 (11th Cir. 1997) (per curiam). Here, a confidential informant who Mason found reliable in the past had told Mason about a suspect who just obtained cocaine and would have the drugs concealed in his car or on his person.

---

[14] To the extent Plaintiffs attempt argue the stop violated Plaintiffs' Fourth Amendment rights based on its duration, this claim was not raised in the Complaint and cannot be raised for the first time in response to summary judgment.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam).  Further, Plaintiffs made no arguments in response to Defendants' motion for summary judgment on the potential claim that the stop was unreasonably long, so the Court treats the claim as abandoned.  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc).

Mason corroborated this information by identifying Plaintiffs, who fit the informant's description, travelling over the bridge between the areas specifically mentioned by the informant in a vehicle also matching the informant's description. The Court finds that Mason had arguable probable cause to search the vehicle for drugs based on these facts regardless of the drug dog alert.[15]

Plaintiffs claim that the vehicle search with the trained K-9 dog violated the Fourth Amendment because it was not supported by probable cause. The parties cite no authority on the issue, but the Supreme Court has held that "the use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405, 409-10 (2005) ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."). In *Caballes*, the dog sniffed the exterior of the vehicle during a lawful stop for a traffic violation unrelated to drugs. *Id.* at 406 (noting the initial traffic stop for speeding). Here, there was already arguable reasonable suspicion to support the drug-related investigatory stop and

---

[15] Factual disputes as to Mason's actions involving the dog alert and subsequent discovery of cocaine are not relevant to the constitutionality of the vehicle searches themselves.

arguable probable cause to search the vehicle for contraband. Therefore, Mason was justified in using the K-9 dog to sniff the exterior and interior of the vehicle.   While the Supreme Court noted that a traffic stop "can become unlawful if it is prolonged beyond the time reasonably required to complete that mission," the stop here was justified by arguable reasonable suspicion of drug activity, not a traffic violation.   *Id.* at 407.   To the extent Plaintiffs attempt to argue the search was unreasonable based on having to wait for Mason to bring the dog from his nearby home, this claim was not raised in the Complaint and cannot be raised for the first time in response to summary judgment.   *Gilmour*, 382 F.3d at 1315.   Further, Plaintiffs made no arguments in response to Defendants' motion for summary judgment on the potential claim that the stop was unreasonably long, so the Court treats the claim as abandoned.   *Resolution Trust Corp.*, 43 F.3d at 599.   Therefore, Mason is entitled to qualified immunity for conducting the searches of the vehicle.

### iii.   The Pat Down and Pocket Search of Mr. Richardson

An officer is justified in conducting a limited search for weapons once he has reasonably concluded that a person who was lawfully stopped might be armed and presently dangerous.   *See Terry*, 392 U.S. at 21-22 (applying the standard of whether "the facts available to the officer at the moment of the seizure or

the search 'warrant a man of reasonable caution in the belief'
that the action taken was appropriate") (internal quotation
marks omitted).   Here, Mason had specific information of
Plaintiffs' involvement with drug activity.   Because drug
activity is known to be linked to weapons and violence, Mason
had sufficient reason to believe Mr. Richardson might be armed
and dangerous.   *See United States v. Hromada*, 49 F.3d 685, 689
(11th Cir. 1991) ("Guns and violence go hand-in-hand with
illegal drug operations.").   Moreover, prior to the pat down,
Mr. Richardson voluntarily turned over a knife to Ming.   The
Court finds that Mason was justified in conducting the pat down
and pocket search.   *See United States v. Cruz*, 909 F.2d 422, 424
(11th Cir. 1989) (per curiam) (finding a pat down search for
weapons reasonable based on suspicion of narcotics trafficking).
*But see United States v. Willis*, 759 F.2d 1486, 1497 (11th Cir.
1985) (applying the standard of probable cause when the police
ask suspects to empty the contents of their pockets because this
so intrudes "as to effect an arrest").   *See also Talley*, 108
F.3d at 281-82 (concluding that information provided by a
confidential informant "when combined with independent
corroboration by the police" can rise to the level of probable
cause under the totality of the circumstances); *United States v.
Goddard*, 312 F.3d 1360, 1363-64 (11th Cir. 2002) (finding
probable cause for a pre-arrest search of a suspect's pocket for

drugs based on information from a reliable informant and independent corroboration).

In addition, even if the pat down and pocket search were determined to be unconstitutional, Mason is still entitled to qualified immunity because Plaintiffs failed to show that a reasonable officer would have been on fair notice that such a search would violate the Fourth Amendment under the standards clearly established in *Terry* and *Adams v. Williams*, 407 U.S. 143, 146 (1972), and their progeny. At a minimum, Mason had arguable probable cause to conduct the pat down and pocket search, and therefore, he is entitled to qualified immunity. *Wood v. Kessler*, 323 F.3d 872, 878 (11th Cir. 2003) (internal quotation marks omitted) (explaining the standard of "arguable probable cause" such that "[e]ven if law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity") (internal quotation marks omitted).

### iv.  The Strip and Cavity Searches

Defendants did not move for summary judgment as to Mr. Richardson's Fourth Amendment claim arising from the manner in which the strip search was conducted, and the Court previously concluded that the decision to conduct his strip search and the manner of the search cannot be reasonably separated. *See supra*

note 3.   Therefore, the Court's analysis is restricted to Mrs. Richardson's Fourth Amendment strip search claim.

Mrs. Richardson claims that the strip and cavity search was unreasonable under the totality of the circumstances because (1) Mason lacked probable cause to conduct such an intrusive search, (2) a thorough search of the car was not performed first before resorting to the strip and cavity search, (3) a pat down of Mrs. Richardson was not performed first before Mason called a paramedic, who was not a sworn law enforcement officer, to perform her strip and cavity search, and (4) the manner of the search was unreasonable and abusive.

The Court starts its analysis with a determination of the clearly established law regarding the constitutionality of searches that involve the removal of clothing, the exposure of sensitive body parts, the examination of body cavities, and the touching of body parts that are typically covered with clothing. The Court has located no binding precedent directly on point that sets forth the parameters of such searches of persons who are stopped because of probable cause that the vehicle in which they are riding may contain contraband and who are searched prior to being arrested.   The Eleventh Circuit, however, has clearly stated the constitutional parameters for such searches of persons who have been arrested.   The Court finds that any reasonable law enforcement officer would understand that the

constitutional requirements for such searches of a person who has been arrested would apply at a minimum to a person who has not yet been arrested.   Therefore, the Court must examine whether the facts, construed in favor of Plaintiffs, violate the clearly established minimum standard for such searches.

The Eleventh Circuit, in an *en banc* decision, stated that for a post-arrest strip/body cavity search, the law enforcement officer must have "at least a reasonable suspicion" that the person to be searched possesses contraband and that the contraband is reasonably suspected to be located in the area to be searched. *Evans v. Stephens*, 407 F.3d 1272, 1279-80 (11th Cir. 2005) (en banc).   After this decision by the Eleventh Circuit, a reasonable officer would be on fair notice that in order to conduct the type of strip/body cavity search conducted here, he needed reasonable suspicion or else he would run afoul of the Fourth Amendment.

The Court finds that construing the facts in favor of Mrs. Richardson, as required at this stage of the proceedings, a reasonable officer could not conclude that he had reasonable suspicion that Mrs. Richardson possessed drugs in the areas under her clothing that were searched.   Mason had information from a reliable informant that a vehicle being driven by Mr. Richardson may contain illegal drugs, that a female would be a passenger in the vehicle, and that the occupants of the vehicle

may have the drugs on their person.  No specific information was provided as to Mrs. Richardson's role in the alleged illegal activity.  She was not identified other than the generic gender description, and no information was available to Mason that she had any history of hiding drugs in her body cavities covered by her clothing.  Furthermore, after the investigative stop, the car was subjected to the less intrusive K-9 dog sniff *after* her strip/body cavity search and not before.  Under the totality of the circumstances based on the facts viewed in the light most favorable to Mrs. Richardson, the Court finds that a reasonable officer would have been aware that forcing a passenger in a vehicle to exit the vehicle; enter a convenience store escorted by an agent of the government; squeeze into a bathroom with that agent, who is a complete stranger; remove clothing; and subject orifices to inspection and penetration based solely on a reliable tip that drugs may be in the car or on the persons occupying the car would constitute a violation of a clearly established right under the Fourth Amendment.  The fact that Atkinson may have been polite under the circumstances does not eliminate the nature of the search or the fact that it was compelled, and it does not justify the decision to conduct such an intrusive search in the first place.  As the person who made the decision to conduct the unconstitutional search and who directed the manner in which it should be conducted, Mason is

not entitled to qualified immunity as a matter of law. Accordingly, his motion for summary judgment as to Mrs. Richardson's strip/cavity search claim is denied.

### v. The False Arrest of Mrs. Richardson

The Fourth Amendment requires probable cause for an officer to make an arrest, and for qualified immunity, "an officer need not have actual probable cause but only arguable probable cause." *See Wood*, 323 F.3d at 878 (internal quotation marks omitted). The Court finds that Mason is entitled to qualified immunity on this claim because there was arguable probable cause to arrest Mrs. Richardson for obstruction.[16]   Although Mrs. Richardson was not charged with obstruction, the Fourth Amendment requires that her arrest be supported by probable cause for any criminal offense. *See Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004) (rejecting the notion that the probable cause inquiry must be confined to the known facts bearing upon the offense actually invoked at the time of arrest); *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010) ("If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply."). Obstruction

---

[16] Because the Court finds arguable probable cause to support an arrest for obstruction, the Court need not address additional bases the officers may have had to make the arrest. Therefore, the alleged facts about Mason's actions involving the dog alert and subsequent discovery of cocaine are immaterial to deciding whether Mason is entitled to qualified immunity on the false arrest claim.

under Georgia law occurs when a person "knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties." O.C.G.A. § 16-10-24. Georgia courts have held that misdemeanor obstruction does not require an act of violence or force. *Stryker v. State*, 297 Ga. App. 493, 494-95, 677 S.E.2d 680, 682 (2009).

Here, the facts show that Mrs. Richardson refused to follow Ming's orders to get back in front of Ming's car when "she was hollering" as she approached Mason during the search of Mr. Richardson. Mason Dep. 79:18-24; D. Richardson Dep. 204:22-205:6. She continued, causing Ming to repeat the order several times and even threaten to handcuff her before she eventually stepped back, but not as far back as he had originally directed. D. Richardson Dep. 204:18-206:14. Her refusal to obey an officer's lawful directions during an investigation supports arguable probable cause for an arrest for obstruction, whether or not actual probable cause existed. *Cf. West v. State*, 296 Ga. App. 58, 61-62, 673 S.E.2d 558, 561-62 (2009) (finding that a suspect's refusal to comply with an officer's repeated commands to leave the scene could be a basis for an obstruction conviction). Plaintiffs cited no authority that the arrest violated clearly established constitutional rights, and they have failed to point to evidence that Mason's arrest of Mrs. Richardson under the circumstances was so egregious that it

36

violated the unreasonableness standard of the Fourth Amendment "with obvious clarity." *Vinyard*, 311 F.3d at 1350.   For these reasons, Mason is entitled to qualified immunity on Mrs. Richardson's false arrest claim.

### b.   DEPUTY MING

Defendants maintain that Ming is entitled to qualified immunity because Plaintiffs cannot prove that his individual actions amount to a violation of a clearly established constitutional right.   The record, viewed in the light most favorable to Plaintiffs, shows that Ming's actions were limited to searching Plaintiffs' vehicle, standing guard as backup officer, and transporting Plaintiffs to the Sheriff's Office after Mason arrested them.   Plaintiffs do not dispute that these acts fall within the scope of Ming's discretionary authority.

The Court has found that Mason is entitled to qualified immunity because he did not violate clearly established law when he stopped Plaintiffs' vehicle, searched the vehicle, and conducted the pat down and pocket search of Mr. Richardson.[17] For the same reasons, Ming is entitled to qualified immunity. *See, e.g.*, *Grider*, 618 F.3d at 1257 ("Probable cause may exist based on the collective knowledge of law enforcement officials derived from reasonably trustworthy information.").   Ming knew

---

[17] Although Plaintiffs contend that Mason, not Ming, conducted the pat down, Ming admitted in his deposition that he performed the pat down of Mr. Richardson.   Ming Dep. 18:14-15.

that Mason, his supervisor, stopped the vehicle based on the informant's information about the occupants obtaining cocaine, and he personally observed what transpired during the investigative stop. Plaintiffs pointed to no evidence that Ming was unreasonable to rely on Mason's reasonable suspicion and probable cause determinations.

Plaintiffs argue that Ming was an independent voluntary participant in the strip and cavity searches. Plaintiffs point to no evidence that Ming was involved in the search of Mrs. Richardson. As for Mr. Richardson, Plaintiffs contend that Ming participated because he positioned his body at an angle to provide for more privacy during Mr. Richardson's search. Plaintiffs also point out that Ming saw, but did not stop, Mason's search of Mr. Richardson.

Even if the alleged searches were determined to be unconstitutional, Ming's guard role would not deprive Ming of qualified immunity. "[A]ssisting officers during a search are entitled to qualified immunity when there is no indication that they acted unreasonably in following the lead of a primary officer or that they knew or should have known that their conduct might result in a Fourth Amendment violation." *Shepard v. Hallandale Beach Police Dep't*, 398 F. App'x 480, 483 (11th Cir. 2010) (per curiam); *see also Brent v. Ashley*, 247 F.3d 1294, 1305-06 (11th Cir. 2001) (granting qualified immunity to

officers who served a backup role and witnessed or conducted a strip search based on their superior's order, where the record reflected "no reason any of [the officers] should question the validity of that order").

Plaintiffs have failed to show that a reasonable official in Ming's position would have fair and clear warning that Ming's backup role "was unlawful in the situation he confronted." *Corey Airport Servs.*, 587 F.3d at 1285 (internal quotation marks omitted). Ming's limited participation in the incident was not so egregious that it was obviously unconstitutional, and *Terry* and *Evans* do not address a backup officer's liability. *See Corey Airport Servs.*, 587 F.3d at 1287 ("For general principles to clearly establish the law, the case must be an obvious one. . . . But, such decisions are rare."). These standards do not provide obvious clarity that Ming's particular actions as backup officer during the alleged strip and cavity search of Mr. Richardson would violate clearly established constitutional rights.

Lastly, Plaintiffs asserted no basis for a false arrest claim against Ming. The record shows that Ming's involvement in the arrests was limited to transporting Plaintiffs to the Sheriff's Office in his vehicle after the arresting officer, Mason, conducted the arrests. Plaintiffs appear to argue Mason lacked probable cause to make an arrest by fabricating evidence,

but even if Mason actually lacked probable cause for this reason, Ming could still be entitled to qualified immunity if a reasonable officer under the same circumstances could have believed probable cause existed. *See Wood*, 323 F.3d at 878 ("Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.") (internal quotation marks omitted). Ming personally found cocaine hidden under the passenger seat, and Plaintiffs have cited nothing in the record to indicate Ming's awareness or participation in any alleged fabrication or any other reason to suspect a lack of arguable probable cause.[18] Under these facts and circumstances, it would be reasonable for an officer to rely on his superior officer's determination of probable cause for arrest. Furthermore, the Court has found that Mason is entitled to qualified immunity for Mrs. Richardson's false arrest claim, and Ming is entitled to qualified immunity for the same reasons. *See, e.g., Grider*, 618 F.3d at 1257 ("Probable cause may exist based on the collective knowledge of law enforcement officials derived from reasonably trustworthy information."). Because Plaintiffs' citations to authority and to the record fail to create a disputed issue of material fact that could establish

---

[18] In addition, any claim for conspiracy was not articulated in the Complaint and is without support in the record. Plaintiffs' citations to Mrs. Richardson's deposition do not establish that Ming saw or otherwise participated in Mason's K-9 search beyond the fact that afterward Mason instructed Ming to come search the vehicle because the dog had alerted. D. Richardson Dep. 231:2-234:2.

Ming participated in any violations of clearly established
constitutional rights, the Court finds Ming entitled to
qualified immunity for all federal claims.

c.   DEFENDANT ATKINSON

Plaintiffs' federal claim against Atkinson is based solely
on her role assisting Mason with the personal search of Mrs.
Richardson.[19]   Plaintiffs maintain that conducting the alleged
strip and cavity search for drugs was unconstitutional under the
circumstances even if Atkinson was authorized to assist Mason
with such a search, but they also argue that Atkinson was not
even authorized or trained to perform the alleged search.   The
Court first addresses whether Atkinson lacked sufficient
authority to assist with the search such that a reasonable
government agent in her position would have known that by
participating in the search, she would be violating Mrs.
Richardson's rights under the Fourth Amendment and would not be
entitled to qualified immunity.

---

[19]  Plaintiffs now claim that Atkinson "is the primary official
responsible for false arrest" by closing the door after joining Mrs.
Richardson in the bathroom. Pls.' Resp. to Def. Atkinson's Mot. for
Summ. J. 6, ECF No. 40.  This claim against Atkinson was not raised in
the Complaint, Compl. ¶¶ 36, 39-42, and cannot be raised for the first
time in response to summary judgment, *Gilmour*, 382 F.3d at 1315.
Also, Plaintiffs' argument that Atkinson voluntarily participated in
all of the allegedly unconstitutional conduct of the sheriff's
deputies is not supported in the record.  Plaintiffs cite only to the
fact that Atkinson was standing nearby during some of the acts,
Atkinson Dep. 31:1-5, which is insufficient to raise a disputed issue
of material fact as to her individual liability on these grounds.

Although Plaintiffs cite no federal authority on the issue, the Eleventh Circuit has clearly held that "[t]o even be potentially eligible for summary judgment due to qualified immunity, the official must have been engaged in a 'discretionary function' when [s]he performed the acts of which the plaintiff complains." *Holloman*, 370 F.3d at 1263-64. In the context of qualified immunity, the "discretionary function" inquiry focuses on whether the acts in question "are of a type that fell within the employee's job responsibilities." *Id.* at 1265. The Court asks "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal) (b) through means that were within h[er] power to utilize." *Id.*

Again, Atkinson denies a search was ever performed, but the Court views the record in the light most favorable to Plaintiffs in deciding Defendants' summary judgment motion. Plaintiffs, however, use Atkinson's explanation of why she did not perform the search in an attempt to show that she lacked discretionary authority to do so. Atkinson Dep. 34:10-14. The Court finds that Plaintiffs have failed to raise a factual dispute as to whether responding to requests by law enforcement for such assistance is part of Atkinson's job-related powers and responsibilities. The record shows that assisting the police with searches falls within her discretionary authority because

Atkinson has previously performed personal searches "on the scene" in the course of her medical duties.  Atkinson Dep. 16:1-15; Atkinson Decl. ¶ 3.  Temporarily putting aside the alleged unconstitutionality of the search itself, responding in her EMS truck and utilizing her medical knowledge, training, and experience to assist a sheriff's deputy as requested was within her power and pursuant to a legitimate function related to her job as EMS Director.  The Court finds that for purposes of qualified immunity, Atkinson was acting within her discretionary authority when she conducted the strip search of Mrs. Richardson at the direction of Mason.

Given the Court's finding that Atkinson acted within her discretionary authority, Plaintiffs bear the burden of showing Atkinson is not entitled to qualified immunity.  *Holloman*, 370 F.3d at 1267.  The Court finds that Plaintiffs have failed to carry this burden.  Although the Court has found that Mason's decision to conduct the search and his direction that Atkinson assist him subjects him to potential liability, it does not necessarily follow that Atkinson would also be liable simply because she conducted the actual intrusive search.  Plaintiffs must show that a reasonable government agent in Atkinson's position would have been aware that her conduct, which was pursuant to a directive from a law enforcement officer, violated Plaintiffs' clearly established rights under the Fourth

Amendment.  Plaintiffs fail to meet this burden as a matter of law.  In support of their argument, Plaintiffs cite to the Fourth Amendment generally, *Rodriguez v. Furtado*, 950 F.2d 805 (1st Cir. 1991), *Beaulah v. Muscogee Cnty. Sheriff's Deputies*, 447 F. Supp. 2d 1342 (M.D. Ga. 2006), *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005), and state statutes relating to training for peace officers and battery, O.C.G.A. §§ 35-8-3, 35-8-9 to -10, 16-5-23.1.[20]  Authority from the First Circuit, the federal district court, and state statutes does not clearly establish law in this Circuit for purposes of evaluating qualified immunity.  *See Courson v. McMillian*, 939 F.2d 1479, 1497-98 & n.32 (noting that only the U.S. Supreme Court, the Eleventh Circuit, and certain cases from the Georgia Supreme Court can clearly establish a constitutional right); *see also Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); *Knight v. Jacobson*, 300 F.3d 1272, 1275-76 (11th Cir. 2002) (stating that a violation of state law is not enough by itself to support a federal § 1983 claim).  Therefore, the Court only considers whether the alleged search violates a constitutional right clearly established by the

---

[20]  Plaintiffs appear to attempt to cite to Georgia's statute on impersonating an officer: O.C.G.A. § 16-10-23.

Fourth Amendment and *Evans*.   As explained below, neither provides "fair and clear" notice that assisting a sheriff's deputy with a search of a female in this manner "was unlawful in the situation [s]he confronted." *Corey Airport Servs.*, 587 F.3d at 1285 (internal quotation marks omitted).

It is not obvious that Atkinson's conduct violated the general unreasonable search and seizure standard of the Fourth Amendment. *See id.* at 1287 ("For general principles to clearly establish the law, the case must be an obvious one. . . . But, such decisions are rare."). First, the Court finds the manner in which Atkinson conducted her search was not sufficiently abusive such that she would have been on notice that it violated the Fourth Amendment. In *Evans*, the Eleventh Circuit did conclude that strip searches conducted in a certain degrading and forceful manner were obviously unreasonable in the constitutional sense without having to point to preexisting case law addressing the specific acts. 407 F.3d at 1283. The *Evans* court reasoned that "every objectively reasonable officer would have known that, when conducting a strip search, it is unreasonable to do so" by violently forcing two arrestees in a small closet to remove their clothes in front of each other, ridiculing them with racist language, and penetrating their anuses and lifting their testicles with the same baton without intervening sanitation as alleged. *Id.* at 1276-77, 1283.  Here,

the manner of the search of Mrs. Richardson was much less severe because Atkinson allegedly performed the cavity search in a private bathroom in a sanitary and relatively kind manner. The general principles in *Evans* do not make it clear that the *manner* of the pre-arrest cavity search here violates the Fourth Amendment. *Cf. Evans*, 407 F.3d at 1281 n.11 (noting that searches that penetrate orifices are not per se unconstitutional).

The next question is whether Atkinson may be held liable under § 1983 for simply conducting the search. As noted previously, she was following orders from a law enforcement officer who was in charge of an investigation of potential criminal activity. There is no evidence to suggest that Atkinson was aware that Mason did not possess reasonable suspicion to believe that Mrs. Richardson had illegal contraband hidden under her clothes, including within her body cavities. Based on the present record, the Court must conclude that it was Atkinson's understanding that such reasonable suspicion did exist. Given this understanding and the totality of the circumstances that Atkinson faced, the Court cannot conclude that a reasonable person in her position would have known that by proceeding with the search she would be violating Mrs. Richardson's Fourth Amendment rights. Therefore, Atkinson is entitled to qualified immunity. *Cf. Skurstenis v. Jones*, 236

F.3d 678, 684 (11th Cir. 2000) (reversing an order denying qualifying immunity to a medical official who performed a strip search), *overruled on a different ground by Powell v. Barrett*, 541 F.3d 1298, 1314 (11th Cir. 2008) (en banc).  For the reasons explained above, Atkinson is entitled to summary judgment on all federal claims.

### d.   SHERIFF NEWTON

Plaintiffs contend Newton committed constitutional violations in his supervisory capacity.  Specifically, Plaintiffs argue that Newton's investigation conclusions served as ratification of the alleged constitutional violations, that Newton's open policies and anti-drug position were the "moving force" behind the alleged constitutional violations, and that Newton's failure to supervise Mason more closely amounted to deliberate indifference.[21]  As discussed below, the Court finds that Plaintiffs have pointed to no evidence in the record that would lead a reasonable fact finder to find that Newton caused a constitutional violation.

A supervisor may be liable under § 1983 for a subordinate's actions when there is a causal connection between the supervisory actions and the alleged constitutional violation. *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396-97 (11th Cir.

---

[21] Plaintiffs made no arguments in response to Defendants' motion for summary judgment on the failure to train claim.  Therefore, this claim has been abandoned.  *Resolution Trust Corp.*, 43 F.3d at 599.

1994).  A causal connection can be established when a history of widespread abuse puts the supervisor on notice, when the supervisor's improper custom or policy results in deliberate indifference to constitutional rights, or when the facts support an inference that the supervisor directed his subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.  *Gonzalez v. Reno*, 325 F.3d 1228, 1234-35 (11th Cir. 2003).

Here, Plaintiffs point to no evidence that would lead a reasonable fact finder to conclude there was any such causal connection.  First, Newton's *post hoc* approval of the actions in question could not have possibly been the cause of these actions because they had already occurred.  Second, Newton's "policies" do not satisfy the "extremely rigorous" standard for individual liability of a supervisor for a subordinate's actions.  *Braddy v. Fla. Dep't of Labor and Emp't Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).  Newton consistently stated that his policies do not explicitly prohibit strip searches and that those policies contemplate that deputies will act within the limits of the law.  Newton Dep. 37:7-10.  Neither the substance of the existing policies nor the absence of more effective policies amount to the deliberate indifference required to impose individual liability.  Moreover, it would take "considerably more proof than [a] single incident" to establish a causal connection for

individual liability. *City of Okla. v. Tuttle*, 471 U.S. 808, 823-24 (1985) (discussing the causal connection between a policy and a constitutional deprivation, but in the context of municipal liability). Plaintiffs have simply failed to point to evidence that would establish a causal connection.[22]

It is also significant that Plaintiffs point to no evidence that Newton had notice that Mason would act in an allegedly unlawful manner or that Newton failed to prevent such conduct through alleged lack of supervision. The Eleventh Circuit has repeatedly held that "without notice of a need to train or supervise in a particular area," there can be no liability as a matter of law. *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998). Plaintiffs "presented no evidence of a single prior incident" that would put Newton on notice. *Id.* General complaints about Mason's rudeness and cursing are insufficient to put Newton on notice of a need for additional supervision regarding Mason's personal searches. *See Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (holding that even complaints about the relevant unconstitutional conduct were insufficient to give notice when they were "fully investigated and found to be lacking in merit"). Finding there to be insufficient evidence

---

[22] Plaintiffs' citation to the record does not justify an inference that any other strip searches occurred in Georgetown-Quitman County beyond this single incident. *See* Mason Dep. 57:9-58:18 (explaining that Mason does not think he performed similar searches while working for the Sheriff's Office, but he was not completely sure).

that could establish any causal connection between Newton's individual actions and the alleged constitutional violation, the Court concludes that Newton is entitled to summary judgment on these claims.

### 2.   State Law Claims

In addition to their § 1983 claims, Plaintiffs assert state law claims for false arrest and failure to train/negligent retention.[23] Defendants contend that to the extent the Complaint states these claims against them, all individual Defendants are entitled to official immunity under Georgia law.  It is not clear against which Defendants Plaintiffs have asserted these claims, but based on the facts alleged in the Complaint, it appears that the false arrest claims are directed against officers Mason, Ming, and Newton.[24]  It also appears that the failure to train/negligent retention claim is directed against Sheriff Newton.  As previously noted, Mason is not seeking summary judgment as to any claims arising from his arrest of Mr. Richardson, so the only state law claim against Mason to be resolved at summary judgment relates to Mrs. Richardson's

---

[23] To the extent Plaintiffs attempt to assert state law claims of assault and battery based on Atkinson's alleged search of Mrs. Richardson, Pls.' Resp. to Def. Mason's Br. in Supp. of Mot. for Summ. J. 3, these claims were not raised in the Complaint and cannot be raised for the first time in response to summary judgment. *Gilmour*, 382 F.3d at 1315.

[24] Any false arrest claim against Atkinson for closing the door after joining Mrs. Richardson in the bathroom was not raised in the Complaint and cannot be raised for the first time in response to summary judgment. *Gilmour*, 382 F.3d at 1315; *see supra* note 19.

arrest.  The Court concludes that Defendants' motion for summary judgment should be granted as to Plaintiffs' remaining state law claims against Mason, Ming, and Newton based on official immunity.

Georgia law protects officials from individual liability arising from the performance of "discretionary actions taken within the scope of their official authority" as long as there is no actual malice or actual intent to cause injury.  *Cameron v. Lang*, 274 Ga. 122, 123, 549 S.E.2d 341, 344 (2001) (internal quotation marks omitted).  Making arrests falls within discretionary functions of law enforcement officers for purposes of official immunity.  *See, e.g.*, *Selvy v. Morrison*, 292 Ga. App. 702, 704, 665 S.E.2d 401, 404 (2008) ("The making of a warrantless arrest for conduct occurring in an officer's presence is a discretionary act . . . ."); *Reed v. DeKalb Cnty.*, 264 Ga. App. 83, 86, 589 S.E.2d 584, 587-88 (2003) (describing the decision to make an arrest as discretionary because it requires "personal judgment and deliberation on the part of the officer").  Likewise, a sheriff's supervision, training, hiring, and firing decisions are discretionary under Georgia law.  *See, e.g.*, *Russell v. Barrett*, 296 Ga. App. 114, 120, 673 S.E.2d 623, 629 (2009) ("[T]his Court has consistently held that the operation of a police department, including the degree of training and supervision to be provided its officers, is a

discretionary governmental function . . . .") (alteration in original); *Carter v. Glenn*, 249 Ga. App. 414, 416, 548 S.E.2d 110, 113 (2001) (finding police chief entitled to official immunity against negligent hiring and retention claim because such decisions were discretionary).   Therefore, to overcome official immunity, Plaintiffs have the burden of pointing to some evidence that a particular Defendant acted with actual malice or deliberate intent to injure.   *Reed*, 264 Ga. App. at 86, 589 S.E.2d at 588.   Plaintiffs have directed the Court to no such evidence and have not even attempted to make a clear argument in opposition to Defendants' official immunity defense.[25]   Accordingly, Defendants are entitled to official immunity as to these state law claims.

## II.  Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for summary judgment against all Defendants as to their Fourth Amendment claims.   As previously explained, the only Fourth Amendment claims that have not been dismissed by today's Order are Mr. and Mrs. Richardson's strip search claims

---

[25] The Court notes that Plaintiffs' only reference to malicious intent was found in the Complaint's section generally seeking punitive damages from each Defendant.   This does not impact the Court's decision on official immunity due to the utter lack of argument addressing specific acts of specific Defendants in the respective response briefs.   *Cf. Barnard v. Turner Cnty.*, 306 Ga. App. 235, 237 & n.3, 701 S.E.2d 859, 862 & n.3 (2010) (finding that because the plaintiff did not allege that the defendant intended to cause the injury, the complaint did not state a claim of actual malice for purposes of defeating official immunity despite generally seeking punitive damages for "willful, intentional, fraudulent, and reckless" acts).

and Mr. Richardson's false arrest claims against Mason in his individual capacity.   Although the Court found that Mason was not entitled to summary judgment as to these claims, the record is clear that genuine factual disputes exist regarding these claims.   For example, both Mason and Atkinson dispute that the strip searches occurred in the manner claimed by Plaintiffs. Construing the evidence in favor of Mason as the non-movant, the a reasonable jury could find that the searches were reasonable under the Fourth Amendment.   Accordingly, Plaintiffs' motion for summary judgment must be denied.

CONCLUSION

For the reasons discussed above, Defendants' motion for partial summary judgment (ECF No. 26) is denied as to Mrs. Richardson's Fourth Amendment strip search claim against Mason in his individual capacity, but is granted as to all remaining claims for which summary judgment was sought.[26]   Plaintiffs' motion for partial summary judgment (ECF No. 23) is denied. Plaintiff's motion to amend (ECF No. 43) to substitute the Unified Government of Georgetown-Quitman County for Defendant Quitman County is granted, but summary judgment is granted as to all claims against that Defendant.   Accordingly, the following claims remain pending for trial:   (1) Mrs. Richardson's Fourth Amendment strip search claim against Mason; (2) Mr. Richardson's

---

[26] *See supra* note 3.

Fourth Amendment strip search claim against Mason; (3) Mr. Richardson's Fourth Amendment unreasonable seizure/arrest claim against Mason; and (4) Mr. Richardson's state law false arrest claim against Mason.

IT IS SO ORDERED, this 17th day of December, 2012.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE