```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION

DENISE RICHARDSON and CALVIN    *
RICHARDSON,
                                *
     Plaintiffs,
                                *
vs.                                    CASE NO. 4:11-CV-124 (CDL)
                                *
COREY MASON,
                                *
     Defendant.
                                *
```

O R D E R

INTRODUCTION

Trial by jury is one of the hallmarks of our justice system and one of the bedrock principles upon which our Nation was founded. It is embedded in our Constitution.[1] Our founders believed it to be more than a judicial procedure; they viewed it as a safeguard against tyranny.[2] It is therefore not surprising that the judiciary has long recognized the deference to be paid to jury verdicts.[3] But that deference is not absolute. Juries

---

[1] *See* U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes . . . shall be by Jury . . . ."); U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . .").
[2] In 1789, Thomas Jefferson wrote a letter to Thomas Paine describing trial by jury as "the only anchor ever yet imagined by man, by which a government can be held to the principles of its constitution." Letter from T. Jefferson to T. Paine (July 11, 1789), *in* III *The Writings of Thomas Jefferson: Being His Autobiography, Correspondence, Reports, Messages, Addresses, and Other Writings, Official and Private* 69, 71 (H.A. Washington ed., Taylor & Maury 1853).
[3] *See Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944) ("Courts are not free to reweigh the evidence and set aside the jury verdict

are not immune from human fallibility, and they sometimes get it wrong.  In those exceptional cases where they get it terribly wrong, the Court is as duty bound to correct the error as it is to decline to disturb a jury verdict based solely upon its personal disagreement with the outcome.[4]  This is one of the exceptional cases.

The jury here returned a $5,000,000 verdict against a Georgetown-Quitman County deputy sheriff in his individual capacity for violating the Plaintiffs' Fourth Amendment rights to be free from unreasonable searches.  The reading of the jury verdict was not the first indication that the trial had not gone well for the Defendant.  During Plaintiff Denise Richardson's direct examination, she embellished her description of Defendant's conduct by volunteering that "God don't like ugly," as she preached to the jury that she was a "God-fearing woman" who lived by "the Good Book."  Two audible "Amens" could be heard from the jury box in response to her mini-sermon.  Whether this public display of affirmation reflected an impassioned jury incapable of rendering a verdict based on the evidence and

---

merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."); *accord Spurlin v. Gen. Motors Corp.,* 528 F.2d 612, 620 (5th Cir. 1976) ("[F]acts once found by a jury in the context of a civil trial are not to be reweighed and a new trial granted lightly.")
[4] *See Spurlin,* 528 F.2d at 620 (stating that the standard for disregarding a jury verdict and granting a new trial is generally whether the verdict is "against the great weight of the evidence.")

consistent with the law cannot be determined; but it certainly foreshadowed the ultimate result.

As explained in more detail later in this Order, the searches were admittedly invasive, but they were based on reasonable suspicion, lasted no longer than five minutes, and resulted in no significant or lasting physical injury. Yet, the jury awarded each Plaintiff $2,500,000 in compensatory damages for what they endured.[5] Defendant now seeks judgment as a matter of law based on qualified immunity, or, in the alternative, a new trial and/or remittitur of the verdict (ECF Nos. 91, 92, 93). For the reasons alluded to at the opening of this Order, deciding whether to disregard the wisdom of a panel of fair and impartial jurors is never an easy task. But quite frankly, this one is not too hard. It is obvious that these verdicts cannot stand. As explained in the remainder of this Order, Defendant is entitled to qualified immunity as to Denise Richardson's claim and to a new trial on Calvin Richardson's claim.

FACTUAL BACKGROUND

Upon receiving a tip from a confidential informant that a vehicle being driven by Plaintiff Calvin Richardson ("Mr.

---

[5] Although the Court has not conducted an exhaustive nationwide verdict search, the Court is unaware of any jury verdict from the Middle District of Georgia in a Fourth Amendment search claim brought pursuant to 42 U.S.C. § 1983 that comes close to the award of compensatory damages in this case. And the Court would be surprised to find a comparable verdict anywhere in the country that has been upheld.

3

Richardson") contained illegal drugs, Defendant Corey Mason ("Mason"), a sergeant with the Georgetown-Quitman County Sheriff's Office, stopped Mr. Richardson's vehicle at the Liberty Food Mart on U.S. Highway 82 in Georgetown, Georgia to conduct an investigatory stop. Plaintiff Denise Richardson ("Mrs. Richardson") was a passenger in the vehicle. During the stop, Mr. and Mrs. Richardson were allegedly subjected to strip searches that included examination, exposure, and touching of their body parts and cavities. The invasive body searches yielded no contraband, but they have produced this lawsuit.[6]

Claiming that the searches, investigatory stop, and their ultimate arrests violated their Fourth Amendment right to be free from unreasonable searches and seizures, Plaintiffs sued the persons who participated in the stop, searches, and arrests in their official and individual capacities, the Georgetown-Quitman County Sheriff in his official and individual capacity, and Georgetown-Quitman County. They sought damages for the constitutional violations pursuant to 42 U.S.C. § 1983 ("§ 1983") and also asserted various state law claims. Prior to

---

[6] The label given to the type of search a person is subjected to is of no legal significance. It is the nature and specific factual circumstances of the search that are important. However, for purposes of a written order, it is sometimes expedient to use a shorthand reference to the particular search being analyzed. In this Order, "strip search" and "body cavity search" refer to a non-consensual search for contraband on a person's body that includes the examination, exposure, and/or physical touching of parts of the body that are typically covered with clothing in public settings.

trial, the Court granted summary judgment in favor of Defendants on several claims. *Richardson v. Quitman Cnty., Ga.*, No. 4:22-CV-124 (CDL), 2012 WL 6569283 (M.D. Ga. Dec. 17, 2012). As a result, the only claims that remained for trial were Mrs. Richardson's Fourth Amendment strip search claim against Mason, Mr. Richardson's Fourth Amendment strip search claim against Mason, and Mr. Richardson's Fourth Amendment and state law false arrest claims against Mason. Based on rulings during the trial, the only surviving claims submitted to the jury were Mr. and Mrs. Richardson's strip search claims against Mason in his individual capacity. These remaining claims did not encompass whether the decision to stop and search Plaintiffs was initially authorized but were restricted to the reasonableness of the strip searches allegedly performed.

The jury returned a verdict as follows. Regarding both Mr. and Mrs. Richardson's claims, the jury specifically found that "Defendant intentionally committed acts that violated [their] federal constitutional right not to be subjected to an unreasonable search[; that] the Defendant's acts were the proximate or legal cause of damages sustained by [them; and that they] should be awarded damages to compensate [them]." Verdict and Special Interrogatories to the Jury at 1-2, ECF No. 82. The jury then awarded each Plaintiff "$2.5 million." *Id.* at 2.

5

The jury made the following specific factual findings in response to special interrogatories submitted by the Court to assist the Court in making its ruling on Mason's qualified immunity defense. Regarding Mrs. Richardson's claim, the jury found that Mason directed another government agent, who was a female emergency medical technician, to search under Mrs. Richardson's clothing; that Mason's instructions to the agent could "reasonably be interpreted to include directions to search Denise Richardson's vaginal and/or rectal areas;" that Mason had "a reasonable suspicion that Denise Richardson had illegal drugs hidden under her clothing in the areas that he directed she be searched;" that the female government agent did search for illegal drugs under Mrs. Richardson's clothing; that the female agent visually inspected Mrs. Richardson's breasts during the search; and that the female agent physically touched Mrs. Richardson's body during the search but did not probe her vaginal or rectal areas and did not touch her unclothed breast area.  *Id.* at 3-5.  The jury found that the search did not last more than five minutes.  *Id. at 5.*  The evidence at trial also established that the search was conducted inside the convenience store restroom.

Regarding Mr. Richardson's claim, the jury found that Mason searched for illegal drugs under Mr. Richardson's clothing; that Mason visually inspected Mr. Richardson's "buttocks, groin

6

(testicles)" during the search; that Mason had a reasonable suspicion that Mr. Richardson had drugs hidden in the areas that he searched; that Mason physically probed Mr. Richardson's testicles and rectal areas during the search; that the search was not done in a manner that reasonably shielded the search of Mr. Richardson from public view; and that the search did not last more than five minutes.  *Id.* at 6-7.  Evidence was presented at trial that the search of Mr. Richardson occurred in the parking lot of the convenience store on one of the busiest roads in the county in view of members of the public.

## DISCUSSION

### I. Qualified Immunity and Judgment as a Matter of Law

Qualified immunity protects officers acting within the scope of their discretionary authority from liability as long as they did not violate "clearly established" law.  *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010), *aff'd*, 132 S. Ct. 1497 (2012).  Once Mason established that he was acting within his discretionary authority, Plaintiffs had the burden of showing that (1) Mason committed a constitutional violation and (2) the right allegedly violated was clearly established at the time of the incident.  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "[T]his two-pronged analysis may be done in whatever order is deemed most appropriate for the case."  *Grider*

*v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 242 (2009)).

In determining whether a constitutional right is "clearly established," the Court looks to whether a reasonable officer would have fair and clear notice "that his conduct was unlawful in the situation he confronted." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (internal quotation marks omitted). This standard can be met in a number of ways. First, the conduct may be "so egregious" as to violate the Constitution on its face absent clarifying case law, *id.* at 1350-51, but this is considered a narrow exception, *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003). Second, a broad principle in case law may apply to a specific set of facts "with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct" violated federal law at the time the official acted. *Vinyard*, 311 F.3d at 1351. Because most precedents are tied to particularized facts, such decisions are rare. *Corey Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1287 (11th Cir. 2009) (per curiam). Third, fact-specific precedents can clearly establish a right when the specific conduct currently at issue is "not fairly distinguishable" from that already held to violate a federal right. *Vinyard*, 311 F.3d at 1352.

It is undisputed that Mason's conduct falls within the scope of his job functions and thus his discretionary authority. Therefore, Plaintiffs had the burden of showing Mason is not entitled to qualified immunity. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1267 (11th Cir. 2004). The Court previously ruled that Mason was entitled to qualified immunity for conducting the stop of Plaintiffs' vehicle, for searching the vehicle, and for the pat down and pocket search of Mr. Richardson. *Richardson*, 2012 WL 6569283 at *10-*12. The Court found that a conflict in the evidence as to what happened regarding the strip and cavity searches precluded judgment as a matter of law on those claims and required certain factual determinations by the jury. Id. at *12-*13. The jury made various fact determinations, and the Court applies the law to those findings to determine whether based on those facts a reasonable government official would have known that the conduct violated clearly established law. *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002).[7]

---

[7] The Court submitted special interrogatories to the jury on several disputed factual issues that were essential to Mason's qualified immunity defense. Mason contends that the Court should have submitted additional and more specific questions. While it is clear that it is the Court's duty to apply the law to the factual findings made by the jury to determine whether a government defendant is entitled to qualified immunity, the procedure for making this determination can be cumbersome during a jury trial, often requiring the jury to make detailed factual findings without fully understanding the consequences of those findings. Moreover, since those factual findings must be unanimous, the Court must balance the need to obtain the *essential*

The Court begins its analysis with a determination of the clearly established law regarding the constitutionality of searches that involve the removal of clothing, the exposure of sensitive body parts, the examination of body cavities, and the touching of body parts that are typically covered with clothing. The Court has located no binding precedent directly on point that sets forth the parameters of searches of persons who are stopped because of probable cause that the vehicle in which they are riding contains contraband and who are searched *prior* to being arrested.  The Eleventh Circuit, however, has clearly described the constitutional parameters for searches of persons *after* they have been arrested.  The Court finds that any reasonable law enforcement officer would understand that the constitutional requirements for such searches of a person who has been arrested would at a minimum apply to a person who has not yet been arrested.  Therefore, the Court must examine whether the facts found by the jury and construed in favor of Plaintiffs violate the clearly established minimum standard for such searches.

The Eleventh Circuit, in an *en banc* decision, stated that for a "post-arrest investigatory strip search," a law enforcement officer must have "at least a reasonable suspicion"

---

information with the risk of propounding *unnecessary* detailed interrogatories that could lead to a hung jury.

10

that the person to be searched possesses contraband in the area of the body to be searched. *Evans v. Stephens*, 407 F.3d 1272, 1279-80 (11th Cir. 2005) (en banc) (noting that the actual standard may be higher "especially where . . . the search includes touching genitalia and penetrating anuses"). After this decision by the Eleventh Circuit, a reasonable officer would be on fair notice that in order to conduct the type of strip/body cavity search conducted here, he needed reasonable suspicion or else he would run afoul of the Fourth Amendment.

For both searches, the jury found that Mason had a reasonable suspicion that Plaintiffs had illegal drugs hidden under their clothing in the areas that were searched. Therefore, Mason is clearly entitled to qualified immunity regarding his decision to search the areas that were searched. But even if the initial decision to search those areas was authorized, the manner of the search must still be reasonable. *See id.* at 1281 ("While searches need not be delicately conducted in the least intrusive manner, they must be conducted in a reasonable manner."). In determining the reasonableness of a search, the law is clearly established that a law enforcement officer must balance the need for the search against the invasion of personal privacy. *Id.* at 1279; *accord Bell v. Wolfish*, 441 U.S. 520, 559 (1979). This determination requires consideration of several factors, including "'the scope of the

11

particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Justice v. City of Peachtree City*, 961 F.2d 188, 192 (11th Cir. 1992) (quoting *Bell* and stating that the Supreme Court set out this test of reasonableness for "instances requiring less than probable cause").

Based on the jury's answers to the special interrogatories, the facts regarding Mrs. Richardson are as follows. Mason had reasonable suspicion that Mrs. Richardson had drugs hidden in the areas that he directed the female agent to search. Mason directed the female agent to search under Mrs. Richardson's clothes. The search was performed in a bathroom inside the convenience store. During the search, the female agent viewed Mrs. Richardson's breast area, but she did not touch or probe Mrs. Richardson's vaginal, rectal, or unclothed breast areas. Under these factual circumstances, the Court finds that a reasonably prudent law enforcement officer would not have known under clearly established law that the manner of this search violated Mrs. Richardson's Fourth Amendment rights. Therefore, Mason is entitled to qualified immunity on Mrs. Richardson's Fourth Amendment claim.[8]

---

[8] The Court observes that when it denied Mason's motion for summary judgment as to this claim, it found that the record at summary judgment, when construed in Mrs. Richardson's favor, would support a denial of qualified immunity if the jury made certain factual findings that were supported by the summary judgment record. *Richardson*, 2012

12

Based on the jury's special interrogatory responses, the facts regarding Mr. Richardson's claim are as follows. Mason had reasonable suspicion that Mr. Richardson had illegal drugs in the areas that he searched. During the search, Defendant Mason made Mr. Richardson lower his pants. He then probed Mr. Richardson's testicles and rectal area, all in public view in the parking lot of a busy convenience store located along a well-travelled highway with members of the public in close proximity to the location of the search. Evidence was also presented that the probing created some degree of physical injury to Mr. Richardson's rectal area that lasted for several months after the search. The evidence and factual findings, with reasonable inferences construed in favor of Mr. Richardson, essentially establish that Mr. Richardson was subjected to an involuntary prostate and testicular exam performed by non-medical personnel for all the public to see with no exigent circumstances requiring that the exam be conducted in the public parking lot. It is hard to imagine a more invasive violation of one's personal privacy. Under these circumstances, the Court finds that a reasonably prudent law enforcement officer would have known that the manner in which this particular search was conducted was clearly unreasonable and a violation of Mr.

---

WL 6569283 at *13. The jury did not make those findings, however, which partially explains why Mason is entitled to qualified immunity post-trial when he was not entitled to qualified immunity at the summary judgment stage.

Richardson's rights under the Fourth Amendment.  *See Evans*, 407 at 1283 (noting that while a general reasonableness standard seldom puts officers on notice, certain facts "take the manner of the search[] well beyond the 'hazy border' that sometimes separates lawful . . . from unlawful conduct").[9]  A contrary holding would convert qualified immunity to absolute impunity, at least as it relates to strip searches conducted in public view.  Accordingly, Mason is not entitled to qualified immunity and likewise not entitled to judgment as a matter of law as to Mr. Richardson's Fourth Amendment claim.

## II. New Trial and Remittitur

In the alternative, Mason moves for a new trial and/or remittitur regarding Mr. Richardson's Fourth Amendment claim against him.  In support of his motion for new trial, Mason points to rulings made by the Court during the trial that he considers erroneous.  He also argues that the amount of damages awarded is grossly excessive and not supported by the evidence, thus requiring a new trial or remittitur of the amount of

---

[9] Mason relies on an unpublished decision where a female officer searched a female in a parking lot by using the clothed suspect's underwear to "floss" her private areas after a dog alerted to the presence of contraband in her pelvic area.  The Court notes that the Court of Appeals panel held only that there was sufficient justification for the search and that the officer was entitled to qualified immunity on an excessive force claim.  *Dominguez v. Metro. Miami-Dade Cnty.*, 167 F. App'x 147, 150 (11th Cir. 2006).  That holding would not reassure a reasonable officer that the public cavity search performed here was reasonable and compliant with the Fourth Amendment.  *Evans*, 407 F.3d at 1283.

14

damages.  The Court rejects Mason's arguments that the Court's rulings during the trial regarding the admissibility of certain evidence and relating to the jury instructions constitute reversible error.[10]  The generous damage award in this case, however, causes some pause.

A new trial is appropriate when the verdict is "against the great weight of the evidence."  *Watts v. Great Atl. & Pac. Tea Co.*, 842 F.2d 307, 311 (11th Cir. 1988).  Moreover, a new trial may be required if the damages awarded by the jury are so grossly excessive that the jury was likely swayed by passion or prejudice.  *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1447 (11th Cir. 1985).  The Court has previously found that Mason had probable cause to stop the Richardson vehicle, and the jury specifically found that Mason was justified in searching Mr. Richardson in the areas that were searched.  Therefore, any embarrassment or stress associated with the actual stop and being subjected to a search under his clothes was not caused by a Fourth Amendment violation.  Rather, the Fourth Amendment violation found by the jury was based on the manner of the

---

[10] Mason also moved to dismiss Plaintiffs' Complaint because of alleged perjury by Plaintiffs and their witnesses (ECF No. 90).  That motion is essentially mooted by the Court's other rulings today, but to the extent that today's rulings do not fully moot the motion, the Court denies it.  Mason had a full opportunity to impeach Plaintiffs and their witnesses on the issues raised by the motion, and the Court instructed the jury on its duty to assess the credibility of witnesses and to evaluate attempts at impeachment of their testimony.  Dismissal of the Complaint is not the appropriate remedy under the circumstances presented here.

15

search.  Construing the evidence in Mr. Richardson's favor, the search consisted of probing into the rectum and testicle areas of Mr. Richardson in a public parking lot for less than five minutes, which obviously would be extremely uncomfortable and highly embarrassing.  Although Mr. Richardson testified that he continued to experience discomfort in the area of his rectum for several months after the incident, he presented no medical testimony as to the nature and extent of any physical injury he suffered or any significant changes in his lifestyle as a result of the search.  Mr. Richardson also produced no evidence of any out of pocket expenses he incurred because of the search; he did testify that he purchased an over the counter medication to relieve the aggravation of his hemorrhoids.

Mr. Richardson was entitled to recover compensatory damages for the emotional pain and mental anguish that were proximately caused by the manner of the search.  No punitive damages claim was asserted, and the jury was not permitted to award damages as punishment to penalize Mason.  While the standard for recovering such intangible compensatory damages is purposefully indefinite and typically left to the enlightened conscience of fair and impartial jurors, the amount awarded must have some relationship to the actual injury for which the award is designed to compensate.  The Court is hesitant, and not permitted, to substitute its judgment for the wisdom of the jurors; but

16

appropriate deference to jury verdicts does not mean blind allegiance to them. Just as the Court must not unduly intrude upon the province of the jury, it is a dereliction of duty to allow a verdict to stand that is not authorized by the evidence. Juries are remarkably right most of the time, but they are not infallible. An award of $2,500,000 for the injury suffered by Mr. Richardson is unreasonably excessive and not supported by the evidence. Accordingly, it cannot be allowed to stand. For this reason, Mason is granted a new trial as to the Fourth Amendment claim asserted by Mr. Richardson.[11]

## CONCLUSION

For the reasons discussed above, Mason is entitled to qualified immunity on Mrs. Richardson's claim, and Mason's renewed motion for judgment as a matter of law (ECF No. 91) is granted as to that claim.[12] Mason is not entitled to qualified immunity on Mr. Richardson's claim, and Mason's motion for judgment as a matter of law is denied as to that claim. Mason's motion for new trial (ECF No. 92), however, is granted as to Mr.

---

[11] The Court is not comfortable simply reducing the amount of the damages award. Although the jury in this case was far too generous, the Court is confident that a new jury will be in a better position than a single judge to determine the appropriate resolution of this claim in a second trial.

[12] Pursuant to Federal Rule of Civil Procedure 50(c)(1), the Court conditionally grants Mason's motion for new trial as to Mrs. Richardson's claim if the Court's judgment as a matter of law is later vacated or reversed. The ground for conditionally granting the motion for new trial is that the jury's damages award of $2,500,000 is grossly excessive and contrary to the great weight of the evidence.

Richardson's claim. Mason's motion for remittitur (ECF No. 93) is denied as to that claim.

ENTRY OF FINAL JUDGMENT AS TO ALL OTHER CLAIMS

After today's Order, all claims in this action have been adjudicated except for Mr. Richardson's Fourth Amendment strip search claim against Mason in his individual capacity for which the Court has ordered a new trial. Since Mason asserts a qualified immunity defense as to that claim which the Court rejected, it is likely that he has the right to appeal that ruling immediately rather than waiting until after his new trial. Given the likelihood of such an appeal, the Court finds no just reason to delay entry of final judgment as to the other claims in this action which have been finally adjudicated. Accordingly, the Clerk is directed to enter final judgment as follows: (1) in favor of Defendant Corey Mason as to all claims asserted against him in his individual capacity by Denise Richardson pursuant to today's Order, the Court's rulings at trial, and the Court's summary judgment order, *Richardson*, 2012 WL 6569283; (2) in favor of Defendant Corey Mason as to all claims asserted against him in his individual capacity by Calvin Richardson (except for Calvin Richardson's § 1983 Fourth Amendment manner of search claim for which a new trial has been ordered) pursuant to today's Order, the Court's rulings at trial, and the Court's summary judgment order, *id.*; (3) in favor

of Defendant Unified Government of Georgetown-Quitman County and Defendants Steve Newton, Corey Mason, Jamie Ming, and Tammye Atkinson in their official capacities as to all of Plaintiffs' claims pursuant to the Court's summary judgment order, *id.*; (4) in favor of Defendant Steve Newton in his individual capacity as to all of Plaintiffs' claims pursuant to the Court's summary judgment order, *id.*; (5) in favor of Defendant Jamie Ming in his individual capacity as to all of Plaintiffs' claims pursuant to the Court's summary judgment order, *id.*; and (6) in favor of Defendant Tammye Atkinson in her individual capacity as to all of Plaintiffs' claims pursuant to the Court's summary judgment order, *id.*

IT IS SO ORDERED, this 1st day of July, 2013.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE
